Silas Bent, Receiver, Plaintiff in Error, *v.* John G. Priest, Defendant in Error.

### June 28, 1881.

1. A trustee is not chargeable with what another person has, by reason of his relation as partner to the trustee, made out of the trust relation.

2. Where it is sought to recover profits made by a trustee out of his trust relation, if it does not appear that he has destroyed any evidences as to the amount by him received, he is chargeable only with the amount actually shown to have been received by him.

3. Where a referee is appointed to ascertain, in accordance with the opinion

of the court, the amount due from the defendant, and, upon the request
of both parties, this appointment is revoked, the court properly refuses
to hear further evidence on the subject.

ERROR to the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

THOMAS T. GANTT and JOHN M. GLOVER, for the plaintiff in error.

A. J. P. GARESCHÉ and J. M. HOLMES, for the defendant in error.

THOMPSON, J., delivered the opinion of the court.

This is a writ of error to the judgment of the St. Louis
Circuit Court in the case already considered between the
same parties — *ante,* p. 543. The defendant appealed
from that judgment, and the plaintiff afterwards sued out
this writ of error, and they were docketed as separate causes
in this court. In the former case we considered the errors
assigned under the defendant's appeal. In the present case
we shall consider the errors assigned under the plaintiff's
writ of error.

The decree which the Circuit Court entered read as
follows : —

" That the said defendant do produce in court here, for
the use of the plaintiff, the first-mortgage bonds of the
Leavenworth, Atchison and Northwestern Railroad Com-
pany, aggregating, at par, the sum of $7,500,with all coupons
thereto attached and remaining unpaid, and with said bonds,
in money, all interest paid thereon since February 1, 1874,
and interest on each instalment of such interest from the
date of its payment to the twentieth day of January, 1880,
at the rate of six per cent per annum ; and the defendant
here in open court declining and refusing so to do, the court
doth further order, adjudge, and decree, that the plaintiff
recover of and from the said defendant the sum of ten
thousand four hundred 35-100 5-12 dollars (being the
interest computed on the sum of seven thousand five hun-

dred dollars payable semi-annually at seven per cent per annum from February 1, 1874, to January 20, 1880, with interest at the rate of six per cent per annum on each semi-annual instalment, from the date of its accrual up to January 20, 1880, together with the value of said bonds for $7,500, computed at ninety cents on the dollar), and also the costs and charges of the plaintiff by him in this suit expended; and that he have execution for said sum of ten thousand four hundred 35-100 5-12 dollars ($10,400 35-100 5-12) and costs."

The plaintiff contends that this decree is erroneous, in that it does not charge the defendant with the value of all the bonds received by Wyman from Peck, instead of the value of a moiety of them. We know of no principle which will support this construction. As already shown in the opinion delivered on the appeal, a trustee will always be charged with all the profits which he himself may have secretly made out of his trust relation, but we cannot see how he can be charged with more than he has thus made, or with what some one else has been enabled to make through an accidental connection with him.

The plaintiff contends that the learned judge should have charged the defendant with the par value of the bonds, instead of estimating them at the value of ninety cents on the dollar. In this respect the decree conforms to the evidence as to the value of the bonds at the time of the trial. Nor can we, as the plaintiff requests, so modify the decree that the interest chargeable against the defendant prior to the date of the judgment, shall be compounded from April 1st or October 1st, for although we know from the evidence that the coupons upon mortgage bonds issued by railroad companies generally represent interest payable half-yearly, and the evidence shows that this was the case with these bonds, yet we do not feel at liberty to apply the maxim, "*contra spoliatorem omnia præsumuntur*," so as to reach the result that this interest accrued

on the dates named. We do not see that this is a case for the application of the maxim. The defendant does not appear to have destroyed any evidential writings ; he simply refused (not on oath as a witness) to tell how much interest he had received on the bonds. The necessary questions under this head might have been put to him when he testified as a witness.

When the learned judge announced his decision he appointed a referee to ascertain the amount due from the defendant in conformity with the principles laid down. At the request of the parties this part of the decree was revoked ; and, having made this request neither party could rightfully claim to introduce further evidence on the subject, and the court committed no error in refusing to allow the plaintiff to do this.

Nor do we feel warranted in charging the defendant with interest at ten per cent per annum. This is not done, so far as we know, except in the case of an embezzlement of trust-funds or the mal-administration of a trust of a criminal nature.

The judgment of the Circuit Court is affirmed. All the judges concur.

Separate opinion by LEWIS, P. J.

Two theories of fact may arise upon the testimony in this record : one, that Peck's negotiations, ostensibly carried on with Wyman, were in reality a transaction with Priest, from beginning to end, Wyman merely acting as a go-between. Several circumstances appear to substantiate this view : Wyman and Priest were partners in business, and presumably in confidential relations with each other ; Peck was "turned over" by Priest to Wyman ; Wyman and Priest thereupon "got right down to business in mighty short order." It is apparent that Wyman understood the whole matter beforehand, and knew what was to be done by either party. The vote and influence of Priest as a director and a member of the advisory committee, consti-

tuted the commodity for which Peck was to pay $15,000. Wyman had no ownership in this, nor any power to dispose of it. He could do or promise nothing in the premises otherwise than as the representative of Priest. In this aspect of the case, Priest is identified as a trustee, who has placed at the disposal of another, for the consideration of $15,000, a part of that which belonged to his *cestui que trust*, to wit, the official vote and influence which lay in his keeping for the exclusive benefit of the corporate interests. He must, upon equitable principles, account for the entire purchase-money which his act has substituted for the commodity sold. His responsibility cannot be diminished by a division of gains with his partner — as it would not be if he should choose to turn over the whole proceeds to another person.

The other theory is, that Wyman traded on his own, or on the partnership, account, with Peck, selling the personal influence of himself, or of his firm, with the corporation officers to procure the desired vote ; and that Priest shared in the proceeds, either as a partner in business or in consideration of his important co-operation in the delivery of the goods. In this event he can be held, as a trustee, for no more than he actually received.

The last-mentioned view appears to embody the conclusion reached by the Circuit Court, and by my learned associates in the opinion agreed upon. I think it is not inconsistent with the testimony, and therefore concur in the result.